We will hear our third and final case now, number 23-17-16, Jose Mendez-Guevara versus Garland. Good morning, Your Honors. May it please the Court. The primary question in this case is whether an individual that states that 99% of the asylum claims filed by citizens of Mexico and the countries that make up Central and South America are utterly baseless, is allowed to serve as a neutral adjudicator, and we would argue, Your Honors, that where we have published statements exhibiting bias against individuals of specific nationalities, that structural error compels remand to a new immigration judge. This is the same reason, for example, if we were to find out about a bias that was drawn out during voir dire, we would excuse that juror for cause. If these statements were made, for example, if we had jury trials in an asylum case, if an individual made statements of this particular tenor, we would strike that juror for cause. Also, after trial, if we found out that that individual who'd served on a jury had been able to hide some preconceived bias or had expressed racial animus against the type of race that the defendant was, we would also return that for a new trial. And so that's... So this has nothing to do with the merits of the claim you're making currently? It has to do with the exhaustion of the claim you're making currently. So you point in inserting that this bias claim was exhausted before the board. You point to JA90, where you have a section about bias. So then I read that. And what that says, essentially, is the decision against my client was so unwarranted and so unjustified as to establish that the person was biased against him. But I don't see anything about his public statements. I don't see anything about the things that a person said when they're not in their capacity. It seems to me that to the extent a bias claim was exhausted, it was a bias claim that the decision itself within the four corners of the decision evidences bias. But I don't see anything about any claim of bias that's outside the four corners of the decision. So why is this exhausted? So, Your Honor, I would point to two things. One, this owns court's precedent, and I'm going to butcher this name in acting line, basically says that if you argue bias in one way that, you know, because we happen to use maybe a different argument to support that this individual was biased, we're not necessarily precluded from that. This seems to be, okay, give me the second one. So the second thing I would say, Your Honor, is that the board dealt with this. And there's significant case law from both this court and several other circuits, Your Honor, that where the BIA directly deals with it, that has not been waived. And so given that the board and its decision on the motion to reconsider, they sort of faulted us, Your Honor, for that same reason that you did that. It wasn't brought up in the initial appeal that was handed by prior counsel. But then they said, in any way, we're going to go ahead and deal with that. So why isn't that an alternative holding? I think because they dealt with the facts itself, that that means that it hasn't thus been waived, since they did give their reasoning for why that wasn't sufficient, Your Honor. I mean, it seems slightly, I know the cases you're talking about where we say, look, if the BIA dealt with this at, like, significant and sufficient detail that there are circumstances under which we would say it's not forfeited. But the fact that this was on reconsideration, it does strike me as slightly different. I mean, I think if there's one thing that's clear from the BIA's kind of internal law and procedures, it's that you're really not supposed to be able to take your best shot before the BIA the first time and then come in the second time and say, same claim, but we've got a bunch of new evidence we want you to look at. And I am very nervous about sort of endorsing that kind of a trickling out the evidence as you go through with your claim. I understand that, Your Honor, but I would point out that prior counsel did make, on the page that Judge Huytens was referencing, they did, as part of their bias argument, they made that the termination itself exhibited bias. And so part of our argument in the motion reconsider was that one of the reasons that the EOIR decided to terminate this individual was because they were aware of the bias. Obviously, you know, we don't have that in the record evidence because we couldn't get that, but they were just claiming that, you know, it's protected by employment practices. But we, again, think that that is sufficiently preserved through their arguments about the termination of the individual and also the statements of the bias itself being present in there. Can I, just as long as we're talking about kind of the stages at which the evidence is coming in, so in your introductory statement before us and in your brief, the statement you're relying on mostly to show the bias is the IJ saying that 99% of these claims are utterly baseless. But that statement was never in front of the BIA, right? That we're hearing about that for the first time on appeal. I agree, Your Honor, and I know that the government disputes that, but I believe that that's sufficient enough for remand because, I mean, that didn't occur until we were well late into this stage. And so if the court believes... I thought that happened. You're telling me that that statement was made before the BIA made its decision on reconsideration? Sorry, Your Honor, I might have been referencing the the congressional hearing which took place during the briefing of this. The 99% statement, I think, was available before the BIA made its decision on reconsideration. Yes, Your Honor, but I also think that the sworn statements, especially given that they're under oath that were made to Congress, also... Okay, but then I just wanted the 99% statement. We are hearing about that for the first time on appeal, even though it would have been available to have been introduced to the BIA on reconsideration. That's correct, Your Honor, but... So I think we can't look at that because we are confined to the record that was before the agency. Well, I guess I would dispute that a little bit in the sense of, like, is bias, to me, is a legal finding, and given that we're citing his published statements that are available to the court, because the BIA itself can't engage in factual findings, so bias must, therefore, by itself be a legal conclusion here. And so I think that the court can consider these statements. And again, if the court were inclined to say that, okay, at the very least, we need to put the congressional statements that were made during the briefing of this case before the board, then they could remand to the board to consider those congressional statements that, again, were made under oath. So, like, you're saying we could almost take judicial notice of this as a legislative fact. Like, he just said this in the world, and we can notice it. I think the court could take notice of a judicial law review article. I think the court could take judicial notice of published articles that came out from, you know, news agencies, that kind of stuff. And so, again, if the court doesn't want to engage in that in the first instance, I think that remand would be appropriate in this so that it was properly before the board. Given that we're talking about an individual who made statements of a similar tenor both before and after his tenure of being an immigration judge, I think when presented with the sandwiching of that, I don't know how you can't conclude that he wasn't sort of of the same mind at the same time that he was on the bench, Your Honor. And so, again, I know that the government's arguing that this has to be contained within the four corners of the decision itself. I would argue that there are facts that are specifically overlooked by this immigration judge when he is designing to make a negative credibility finding. And the reason that it's so important that it's a negative credibility finding is because we give so much deference to that particular individual. We give so much deference to the fact finder on demeanor, on all these other things, and that's why we have a substantial evidence standard of review at this particular stage of appeal. But if you look at page 380 of the record, there's specifically a passport photo that is stamped with the date of June 29, 2015. Okay, in the I.J.'s decision on page 169 of the JA, he specifically faults them for not having included a stamp copy of the passport and then goes through like, oh, they submitted this other passport, but he's saying it doesn't have the stamp. But the I.J. clearly never referenced the actual passport that was submitted because there's a clear stamp that's on page 380. In addition to that, he says that they didn't have letters from the family themselves, when if you go and look at the record at page 890, I believe, there was a letter from Saul from Clelia's brother that's included there. He said, we don't have a letter of evidence of anything from El Salvador that could sort of corroborate the events that you're occurring. So he faults them on credibility and corroboration, but then he fails to actually take full consideration of the record because he had in his mind that he was going to make a negative credibility finding, knowing that that's the hardest to overturn on appeal. Can I just ask you, so the BIA, as you say, they didn't, on reconsideration, did not just rest on, look, we're hearing about this for the first time. They also did rely on that statement from the board opinion that says an applicant is not denied a fair hearing merely because an immigration judge has a point of view about a question of law or policy. Do you disagree with that as a statement of law or is it your position that there's something else here besides the I.J.'s point of view about a question of law or policy? So I fully believe that immigration judges can speak on policy. They could speak on immigration reform. They could speak on one side of the issue or the other and that would be completely fine. What I think is problematic here is when we're talking about a particular class of individuals that appear before the immigration judge as applicants for relief and when he's called those baseless claims for relief, I think that's where it becomes a problem. I think if he just said at large, asylum needs to be reformed, these are things that I would think about restructuring or we need border security, I have no problem with that and I wouldn't be filing a motion to recuse here in this case. Similarly, you know, there are many immigration judges I appear up in front of that were fierce DHS prosecutors and obviously took a very heavy enforcement position at their prior job and I've never filed a motion to recuse against them because if they had just taken a simple policy perspective and not commented on individual cases or made sort of individualized pre-determinations about outcomes, I don't think we would have the same issue that's present before the court today. And I would also note that I think that the board is violating its own principles. If you go look at matter of YSLC, in that case, the board doesn't actually make a prejudice finding. So the government argues that we haven't argued prejudice sufficiently here in this case, although I think again, in a structural error, that should be presumptive, but YSLC never makes an actual deprivation or sorry, prejudice claim and so they just basically said this doesn't rise to the high level that we hold an immigration judge to and as a supervisory authority, the board isn't is able to impose a higher sort of set of ethics on its own employees if it wants to and so I think we've satisfied at least the very appearance of impropriety and bias in this case and so the board is then not satisfying its own standard, strict standard that it holds immigration judges to and so you know, again, we're not asking for a broad rule here. We're asking for just specific remand in this specific case because of the nature of these specific statements. Could I turn you from the bias question to the merits question, the sort of part where you're attacking the merits of the IJ's decision for a minute? I'll just say this. So I read, I read your, the brief, the section of your brief about this and I saw lots of things that strike me as totally good arguments for why there was a very good argument the IJ should have found otherwise. There's reasons that the IJ should have reached different conclusions, that there's innocent explanations for the things the IJ declined to give innocent explanations. But as you know, you do this for an area of living, that isn't nearly enough to get an IJ decisions, assuming again, we get past the bias, bracketing just for the sake of argument. What is your sort of best case or what finding do you think is your best case where it's not just the IJ should have, could have, probably maybe would have, other IJ's would have found differently, but that this IJ's finding was such that no rational finder could have concluded those things. Not just you believe they should have found differently in your case. Well, again, Your Honor, I would point to the IJ's own factual findings as he's going through criticizing them on credibility and corroboration on page 169, that finding that there was no passport submitted that would have corroborated the entry date. Again, there is a passport in there that shows the entry date of June 29, 2015. He says that we don't have evidence from El Salvador. There was a letter from the brother who was still in El Salvador. And so I think that is sort of the best evidence because he's been cherry-picking the evidence. And so then again, the board itself cites Anderson for the premise that, well, you know, we might have two permissible views here, but we have to go with the view that we give deference to. And that to me suggests that the board was thinking, okay, if we didn't have to give deference here, if this was sort of de novo review, they might have made a different credibility finding. And I would also, I know it's a little... But the board's allowed to do that, too. The board itself is allowed to defer to IJ's about credibility findings, right? 1,000%, Your Honor. But the problem is we can't defer to this particular IJ's findings because it's a negative credibility finding. For example, if he just made a legal conclusion, I think that the board could have either obviously reviewed that de novo... But we can't defer because of the bias issue? I agree. So no, that is important because I guess you could view you as having two arguments. One is the bias argument. The other is the sufficiency finding. But I think, I want to make sure I'm not putting words in your mouth, right? So do you think that if for whatever reason the bias claim fails, bracketing that, assuming that you're not giving anything up by positing that for purpose of this question, do you have a separate claim that is independent and separate from the bias claim? Yes, Your Honor. On the credibility, the holes we pointed out in the immigration judges and the flaws in his actual factual findings on credibility alone merit remand. But again, our position is that you don't get there. But if you do get there, we think that there's still sufficient evidence that he overlooked purposely parts of the record that would merit remand. Unless the court has any other questions. Thank you. Thank you very much. You've got time on rebuttal. Good morning, Your Honor. Spencer Shuchard for the United States. May it please the court. Petitioners in this case, I'm going to start with credibility because we believe it, it deals with, it disposes of everything. One, because it's not exhausted as you pointed out. Also because it shows there's no prejudice and it's just not needed. Their credibility arguments are the same as their bias arguments with the added gloss that it's just an ad hominem attack there. So petitioners in this case told the agency a story about how they were extorted and intimidated and kidnapped in El Salvador, but they couldn't keep their story straight. About whether they ever called the police. About why they didn't make an extortion payment. About why they did turn around and make a large ransom payment. And critically, whether or when there was ever anyone who needed to be ransomed. And collectively, as they were doing this, they exhibited behaviors that the IJ reasonably found suspicious, including a consistent inability to answer basic questions. The agency can deal with credibility issues, quote unquote, as they see fit. That's from Herrera-Alcala. So long as their disposition is tied to specific and cogent reasoning. Can I ask you just a question about the credibility findings? Sure. Do you read the BIA opinion the same way I do, which is the BIA saying there was sufficient evidence, but to be clear, we're not endorsing everything the IJ said about credibility. We're limiting ourselves to the stuff we're talking about in the opinion. And then there's a footnote saying there might have been some other stuff, but we're not endorsing that. Yeah. That's unusual. It's not unusual. It's actually quite common. Which of the, it seemed to me that the BIA was excluding the part where the IJ says they gave more information than was necessary in response to questions. Was that one of the things? That was one. The IJ made finding that the petitioners, I think, collectively offered a whole bunch of evidence.  Because it is weird kind of to fault people for that, right? I don't know.  People go into these hearings. There's a lot at stake. They get asked questions. They offer up everything they can think of that might be responsive. From the cold record, it's hard to tell. And there's actually not a lot of country-conditioned evidence placed in the record. The other findings that the board left out were the IJ's findings about Clelia, her sort of irritability. And then there was another one about certain omissions. They didn't follow through on that. But that's not unusual. And under INSV-Baghamasbad, they don't have to set findings that I think they don't feel necessary. So it's pretty common for them. The board actually did address everything else the petitioners offered up besides that, which they set aside. The petitioners had concern about whether the IJ addressed their personal circumstances, by which they meant their trauma, their lack of education. The board held that, basically rejected it by saying it doesn't really matter. There's two plausible views of the evidence here. The IJ picked one. He doesn't have to pick the other one. That's a matter of DR. Did the IJ consider the expert declaration about the impact of trauma on memory? No, he didn't. At least not specifically. He did say he considered all the evidence. But the impact of trauma on memory was not offered for one of the many times that he asked the petitioners to repeat themselves or clarify. The petitioners never offered anything other than their illiteracy, basically, or their poor memory, based on the fact that they couldn't follow calendars or count money, as a reason for why they weren't able to recall these dates. So they never said, well, I'm traumatized. So it was hard to remember. They never also brought up the technical difficulties that petitioners mentioned as well. So the IJ doesn't err by not considering explanations that weren't given. But they weren't able to read their sworn statements because they weren't able to. And so their statements contradicted their sworn statements, which they were unable to read. They did. That was a major part of their credibility issue. They have these sworn statements that they've signed. And Clelia actually explicitly disclaimed her statement. She said, no one ever read that to me. Everybody else, they didn't disclaim it. But we presume that somebody read them to them. They had attorneys. Again, they didn't offer this up as an excuse. They've signed them. So that's a statement right there. And that was part of the problem. One of the major issues that the petitioners brought up or conceded in their reply brief was the problem with the timeline of the kidnapping. Clelia testifies that Jonathan, who was born in 2004, was kidnapped when he was seven years old. But her statement is that he was kidnapped when he was ten in 2015. She doesn't reconcile that. She just says, oh, I never saw that statement. But the lead petitioner testifies that Jonathan was kidnapped when he was seven. But he also testifies. This is not in his statement. It's in his testimony that it was 2015. And he reaffirmed that. He said, I was confused about the years. I can't read or write. But he never retracted either one of those things. And it's an impossibility. Fernando, the brother, says Jonathan was kidnapped at age seven. Jonathan himself, the victim, says, I was kidnapped at age seven. So that's 2011 or 2012. But we still have the father saying it happened in 2015. That's not reconciled. The sister, Christella, in her statement says it's 2015. All of these irreconcilable facts placed into the record by the petitioners aren't reconciled. It doesn't matter that the parents can't read or write. They're not the ones. Their illiteracy doesn't affect who wrote what or who said what. It's all there, the children and the parents both. And we don't know anything, actually, about the children's literacy. Can I ask you to address the – I don't mean to take you off course, but I think you said at the beginning that this is all really one claim, and I didn't understand that. And I want to give you a chance to address the bias claim.  So you mentioned in the beginning, Judge Haytens, that their bias arguments are the same as their credibility arguments, with the added gloss that no one who has these opinions could say these things. And that's true, which is why the credibility finding kind of deals with the whole thing. But I think it's important, as we're addressing this now, to look –  What do you mean that the credibility – I really don't understand. What is your point that credibility determination deals with the whole thing? What are you saying? Sure. Well, let me start from the top here. Let's start with how this claim evolved. So the petitioners – You know, just because we have such limited time, I absolutely understand the points at which things were or were not exhausted. I guess I just want to take you right to the meat of it, because I really did not understand your brief, once you get to the merits of the bias claim. Right. I'm addressing the merits here. Okay, great. So there's this line of cases that says administrative law judges, like IJs, violate due process if they have prejudged a case, they have a closed mind. And I guess I'm trying to figure out why that is not at least implicated if you have a judge running around saying 99 percent of these claims are baseless. It's not at all implicated, and there's no evidence of bias in this case. What do you mean there's no evidence of bias in the world, or there's no evidence of bias that's properly before us because it wasn't put in the administrative record? I would say both. There's an allegation of bias. We have statements from the IJ made before he was ever an employee. We have statements from the IJ which are not properly before the court. Understood, but still. Let me just give you a hypothetical, because I'm worried that we keep getting – the clock is ticking, it's making me very anxious. Just take it out of this case. There is a social security judge, and he is running around town saying 99 percent of these guys are making it up, 99 percent. It's all just made up. They just want the money. And now I'm before him with my social security claim, and you're telling me there's no bias problem here. Bias has to manifest in the case. No, it doesn't. That's the part of your brief I didn't understand. Then what's the point of a bias claim? If you have to show, and that's why this mistake got made in my case, what's the bias claim doing? The bias claim isn't doing anything. So you just don't believe there's such a thing as a due process violation based on bias. You have to show the specific mistake that was made in your case. No, you have to connect a bias to the petitioners or their claims. That is your understanding. All right, Caperton. There was no showing that the Supreme Court Justice of West Virginia that the U.S. Supreme Court said had to recuse because of a due process problem. There's no showing that he did anything wrong in the particular case he adjudicated. He obviously ruled against the petitioner, because otherwise the petitioner wouldn't have sought Supreme Court review. But other than ruling against the petitioner, there was no allegation that he did anything in that particular case that was bad. It was that he is a biased judge and thus is constitutional. I'm not suggesting there would be a constitutional problem here, but that he is incapable of hearing the case. The whole point of recusal is this decision-maker is not allowed to decide this case. It's not that I'm taking issue with the specifics of what he or she did. This biased decision-maker can't do this. And you're telling me that in immigration there's just no such claim as that? No, I'm not telling you that. What I'm saying is these cases show that the bias manifests when it can be specified to the petitioners or their claims. Sometimes if a judge is speaking in generalities, he can manifest a bias so severe that it can be imputed to the claim. I guess I want you to come back to the statement. Why isn't 99% of my hypothetical Social Security claims, they're just bullshit. People just want the money. How is someone supposed to feel like they are getting a hearing in front of an impartial tribunal if the judge has already said 99% of these cases are made up? What if it was 100%? Would that be okay? I don't think that would be okay. So that's what the difference here is? No, I would like to explain. I know you want to hear me explain, and I'm going to explain it to you. But due process doesn't require that the IJ never engage in any hyperbole or never express any cynicism, especially when he's not a federal employee. This person... I just want to work backwards. So 100%, you think, for me, this is an important concession, so I just want to make sure I understand it. If the IJ had said 100% of these claims are baseless, then you would agree that the petitioner wouldn't have to show the error in his particular case. That would be sufficient. If the IJ said 100% of the claims are baseless... It would depend on the circumstances of the statement. What else would you need? It would depend on the circumstances of the statement. If he's testifying in court about how he feels about a thing, I think it would be so cartoonishly unlikely for a person to say, these claims never amount to anything and actually mean it. I kind of feel like that's what he said. I know. I can tell. So you think he didn't mean it? No, and there's no reason to impute that he did. Isn't it natural inference that people mean what they say? Wouldn't you have to come forward with some reason to show he didn't believe it?  99% is a common hyperbole. 99% of these claims, this is all junk. Remember, this is a... So if a judge in a criminal case says, obviously 99% of black defendants did it, you're like, that's fine. He's probably just hyperbole. I'm not going to opine on that. Why not? It's this case. No, this case is an IJ who has a political opinion about the immigration system saying that he wishes it was a different...  A political opinion is the asylum... There are serious problems. We don't catch... Some of the people that should get relief don't get relief. Some people who do get relief shouldn't get relief. We need to reform it. That's a political opinion. 99% of these claims are baseless. It's a statement, a fact about the world. And I think just as we would say a federal trial judge who said 99% of criminal defendants are guilty and all of their arguments are BS, I suspect that criminal defendants would have an extremely plausible due process motion to recuse those judges. If a federal district judge said that, I think they'd have a real recusal problem, don't you? Immigration judges, like all judges, are allowed to have opinions. Of course they are. They're allowed to have political opinions. Sure. They're allowed to have political opinions about the subject matter over which they have expertise.  We don't impute bias unless it shows... Until they open their mouth and say something that sure sounds like it's biased. If we did not know that this immigration judge had this opinion, where is the bias in this case? So your position really is that you want to come back to you have to show the error in the proceeding, the bias itself. So you want to kind of take back, even if someone testifies in Congress, my considered view is 99% or maybe 100% of these claims lacks merit. That is fine if you can't show how that bias manifested in a particular case. Because I read the cases you cited for that. They don't say that. And this would be a real sea change in how we understand bias claims when it comes to judicial officers. So I just want to make sure I understand the government's position on this. The facts of those cases support the position. But I'm not going to come and say an IJ could never say anything. Obviously you could imagine things. You've all been imagining them as I've been talking to you. Just as the petitioner has imagined that there's a bias here. Ironically, the only way to impute bias is to presume that the IJ has prejudged a case based on his comments. I don't think that's how due process works, but I'm prepared to let due process go because, again, we don't need it. This case can be decided on the merits and it can be decided on exhaustion. I don't know what you mean when you say I can let due process go. We don't need due process. I mean, you're not bringing the challenge. Because there's no prejudice. Because on the merits... Again, I don't think that usually in cases involving a biased judge, at least an Article III judge, you have to show prejudice. It's the kind of structural error where we say that you don't have to show prejudice. You did not have a fair judge. In fact, hasn't the Supreme Court literally said? The Supreme Court has said over and over again almost nothing is structural error, but one of three things that are structural error are biased trial judge. Due process, as far as I know, the cases that I cited, due process violations have to show the bias and the prejudice. There's no prejudice here. So why was Justice... I forgot his last name. Why was Justice so-and-so required to recuse in Caperton? I don't know. Okay. What is your best case for the proposition that if you can show a biased judge, you still can't win unless you can show that that bias prejudiced you? Whatever it was I said, I'll ask your forbearance here. The device that I brought to use the record here from the government actually stopped working. Yeah, and also the pages of the brief don't hold together, so we're all at a disadvantage, but I'll try to find it. This is going great. But that would be the argument. It's either exhaustion, if I can't get you on board with there's no bias from the four corners of the decision because there's not. If I can't get you on board with that, then I can get you with exhaustion because it's not exhausted. The petitioner never presented this. He presented it just specifically from the findings that the IJ made in the first decision. That's what I meant by credibility and bias are resolved on the same issue in 17-16. The other comments are not before you properly. That's statutory in 1254b-4a. You cannot consider them. And the other comments that the petitioners brought to the board for reconsideration were not considered. It was an alternative holding, as you said. You can't bring arguments you could have brought to the board previously on reconsideration. That's a motion to reopen. They didn't file that. So, again, they did end up deciding it on the merits, but you don't need that. Oh, I found it. I'm sorry. I found it. I think you want Leitke. I might not be pronouncing that right. Leitke, I think it is.  So you guys, the government should argue its cases however it wants. That's not what that opinion is talking about. That's the opinion about how it's not impermissible bias if you develop it sort of during the course of proceedings itself. If the judge during the course of proceedings learns that the defendant becomes exceedingly ill-disposed towards the defendant who has been shown to be thoroughly reprehensible, that's fine. The problem is if he comes to the proceedings having already prejudged that, and that's what's being alleged here. So I thought this case was really not on point, but I'll leave that. There's also a temporal issue here. Again, these comments came before he ever worked for the agency. There's no comments that I'm aware of while he was working for the agency. I don't recall offhand how long before the judge held this hearing, but we know it was quite a while after the judge held this hearing that he made his other comments, not that they can be considered. But again, I'm going to go back to the merits of the credibility case. I went through the kidnapping. I just want to say the petitioners had to, they were trying to set their claim up for asylum. Immigration judges can do these, can view credibility issues as they see fit. That is the law. For an asylum claim, the petitioners have to show persecution, but they could not keep straight what happened to them and what they did about it. They have to show that the government is unable and unwilling to help them, but they couldn't correctly identify or confidently relate whether they ever went to the police. Their testimony was vague. That's in the record. That's not bias. They couldn't answer basic questions. That is in the record. It is not bias. Is that a record that compels the conclusion that the IJ was wrong? No. The answer is no. Unless there are further questions, I'm going to stop there. Thank you. Your Honor, just briefly, if you turn to page six, which is the board's initial decision, they said, for example, there that when they were deciding that the immigration judge was finding that the respondents did not submit sufficient independent evidence, they faulted, again, Jose for not having included a copy of his passport, which, again, we pointed out is factual error. We believe if the court were to just rely on the credibility finding itself without getting to the bias issue, we believe there is, again, sufficient cherry picking or overlooking of the evidence for remand. As for going to some of the other issues, I completely agree with the government that this individual has a right to free speech. However, he doesn't have a right to be an immigration judge. He doesn't have a right to hear a specific class of asylum applicants. I think that is where the distinction goes. I take Judge Harris' point that if certain types of judges, criminal or social security judges, were to make comments about a specific class of individuals that are going to come and litigate cases in front of them, that is the difference here. I don't know that I would necessarily get into a 99% or 100% threshold argument, but I think just the tenor themselves in the totality rise to the level that somebody has an appearance of bias. With regards to the sort of mathematical errors that are taking place, if the court looks at the testimony of all the individuals, they all agreed that the year the act took place of the kidnapping was in 2015. Where it gets confusing is they also all agreed that he was seven years old when it took place. At certain times, both DHS and the judge try to walk them through the math of it, and they just sort of appear oblivious. Again, I think given that they all considered that it took place in 2015, and we have the corroborating passport stamp, I think the court should say that there is at least enough, and that explains the confusion of why they are just terrible at math. Regarding the $40 versus the $7,000, if an individual were to come up to you in the street and say, hey, can I get $40 from you, and even though you had the $40 or were planning on giving the $40 but didn't, that is a lot different than that same individual than kidnapping your son and then you having to come up with $7,000. Obviously, the level of emergency is what dictated his reaction there. Then the government also false them, for they never explained that they were suffering from trauma while they were testifying, and that is not something that you would expect an unsophisticated witness to necessarily explain on the stand, that I am damaged from trauma and that is why I am having difficulty to recall. That is the job of experts. That is the job of litigants to help try to explain, and that is what we have tried to do through both the board litigation and before the court today. The last thing I would say is that bias can always manifest itself in a credibility determination. Again, if you want to nitpick, if you want to find somebody unbelievable, if you want to find something in their demeanor, just take reasonable suspicion, for example. There are cases where a cop can pull over an individual because they weren't looking at them, or they were looking at them too much, or they were looking at them not the right amount. That is the same kind of thing. That is the difference that we give to fact finders in this case. We just take the position that if the court has to, that a credibility determination itself, there is the manifested prejudice that the government is requesting. We would ask the court to grant the petition for review. Thank you. We will come down and greet counsel, and then I will ask that the court be adjourned for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Pamela A. Harris, Toby J. Heytens, Nicole G. Berner